United States District Court
Middle District of Florida
Tampa Division

**DEBRA KAY SJOLANDER,**

 *Plaintiff,*

v.                **NO. 8:22-cv-682-CEH-PDB**

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

 *Defendant.*

## Report & Recommendation

Debra Kay Sjolander challenges a final decision of the Acting Commissioner of Social Security denying her application for supplemental security income. Doc. 1. The decision is by an administrative law judge (ALJ). Tr. 16–27. The Acting Commissioner has filed a 541-page record, Doc. 13, and each side has filed a brief, Docs. 17, 18. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Sjolander argues the ALJ failed to properly evaluate the opinions of her podiatrist, Dr. David Allen, and substantial evidence therefore does not support the residual functional capacity (RFC).[1] Doc. 17 at 7–13. The Acting Commissioner disagrees. Doc. 18 at 5–9.

---

[1] A claimant's RFC is the most she can still do despite physical and mental limitations resulting from her impairments. 20 C.F.R. § 416.945(a).

I.  **Background**

Sjolander was born in 1969. Tr. 227, 296. She has worked as a home health aide, a certified nursing assistant, an assistant helper, a secretary, a landscaping-company owner, and a painter. Tr. 232, 265. She stopped working in March 2019, Tr. 232, and applied for benefits in October 2019, Tr. 196–206, alleging disability from: osteoarthritis of the lower back and right foot, major depressive disorder, attention deficit disorder or attention deficit hyperactivity disorder, and generalized anxiety disorder, Tr. 231. She initially alleged an onset date of March 15, 2019, Tr. 207, 227, but later amended the date to November 21, 2019, Tr. 310.

Sjolander proceeded through the administrative process, failing at each level. Tr. 2–7, 13–32, 82, 99, 112–18. This action followed. Doc. 1.

II.  **Evidence and Hearing**

The record includes treatment records from several medical providers, Tr. 332–478, 487–535, statements from Dr. Allen, Tr. 482–86, 536–41, and reports from agency medical consultants, Tr. 69–81, 86–98.

The medical records show Sjolander fractured her right heel after falling from a ladder in March 2019. Tr. 336, 369, 373, 385. She was prescribed oxycodone for several months. Tr. 353, 357, 499, 508, 515, 517, 519, 521. Apart from foot pain, physical findings were normal at evaluations two weeks after the injury, Tr. 336, and in May 2019, Tr. 381.

In June 2019, Sjolander saw a podiatrist, John Baker, who prescribed meloxicam and recommended physical therapy. Tr. 378–79. The record contains no evidence Sjolander filled the meloxicam prescription or completed

physical therapy. A week later, she saw Michael Courtney, M.D., who noted, "She states that at its worst the pain is a 9-10 out of 10. Currently it is at that level. She does not seem too uncomfortable." Tr. 514. A physical examination resulted in mostly normal findings. Tr. 514.

Sjolander saw Darren Morris, M.D., in July 2019. Tr. 353–56. Physical findings were normal, including a normal gait, no deformities in her extremities, and full muscle strength. Tr. 354–55. Sjolander denied using an assistive device to walk. Tr. 355.

Sjolander returned to Dr. Courtney. Tr. 518. In August 2019, she tested positive for cocaine. Tr. 518. Physical findings were mostly normal again. Tr. 518–19. In September 2019, Dr. Courtney observed that "the oxycodone … seems to be controlling her pain." Tr. 521. Sjolander again tested positive for cocaine, and physical findings again were mostly normal. Tr. 521–22. In October 2019, Dr. Courtney observed, "The medication is helping with her pain and it seems to be getting better with time although it looks as though it is turning into a chronic ankle pain problem but due to degenerative arthritis unfortunately." Tr. 524. Physical findings were mostly normal, but Sjolander had joint pain. Tr. 524.

Dr. Allen began treating Sjolander in August 2019. Tr. 369–71. His treatment notes show she complained of a broken foot, back problems, and an unsteady gait at the initial visit; complained of "severe" foot pain, back problems, and an unsteady gait in September 2019; complained of "moderate" foot pain, back problems, and an unsteady gait in October 2019; and had foot deformity and "a very antalgic gait" at each visit. Tr. 361–62, 364–65, 366–67, 369–71. Other physical findings were normal. Tr. 361–62, 364–65, 366–67, 369–71.

In November 2019, Sjolander saw Robert Brummeler, M.D. Tr. 497–501. Physical findings were normal, including "no muscle or joint pains, no stiffness, no arthritis, no gout, no backache, no swelling, no redness, no pain, no tenderness, no limitation of motion" and "normal muscle tone/bulk, no deformities, normal range of motion, [and] normal spine alignment." Tr. 498, 499. In December 2019, Dr. Brummeler noted Sjolander had joint pain, stiffness, trauma, a limited range of motion, anxiety, and depression, but examination findings were otherwise normal. Tr. 503, 504. February 2020 findings were mostly normal apart from muscle pain, joint pain, stiffness, and depression. Tr. 507. Sjolander's muscle tone and bulk were normal, and she had no deformities. Tr. 508.

In June 2020, Sjolander saw Adam Greenfield, D.O. Tr. 466–68. She complained of foot pain, depression, and attention deficit disorder with hyperactivity. Tr. 466. Physical findings were mostly normal. Tr. 466–67. Her gait was "fluid and appropriate for age." Tr. 467, 468. She had no "pain, swelling, heat, redness or signs of inflammation of the upper and lower extremities." Tr. 468. She had no abnormal "sensory, motor or reflex findings[.]" Tr. 468. She had "full range of motion of the cervical and lumbar region." Tr. 468. She had "a normal gait and does not use assistive devices." Tr. 468. She had no "muscle spasms with tenderness." Tr. 468. She had no "problems with grip strength, dexterity or fine manipulation." Tr. 468. She had full bilateral grip strength and "no problems with motor deficits of the upper or lower extremities." Tr. 468. Dr. Greenfield concluded, "[Sjolander] is having chronic pain in the right foot when standing with a history of fracture which appears to be in control with medications. [She] is having depression on and off and is not treating this condition." Tr. 468.

In July 2020, imaging showed "[m]ild discogenic and bony degenerative change suggested at L4 through S1. Vertebral body heights, disc spaces, spinal laminar lines, interpedicular spaces and paravertebral soft tissues appear otherwise unremarkable." Tr. 472, 474. The clinical indication was: "Low back pain x8 months. Post slip and fall. Right ankle injury. Arthritis." Tr. 472, 474 (some capitalization omitted).

In statements dated July 8, 2020, and September 9, 2020, state-agency consultants Dr. Bradley Stephan and Dr. Larry Meade opined Sjolander can occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds, and otherwise push and pull without limitations; can stand or walk for about six hours in an eight-hour workday; can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds; can balance without limitations; can frequently stoop, kneel, crouch, and crawl; and has no manipulative, visual, communicative, or environmental limitations. Tr. 77–78.

Sjolander saw Dr. Allen again in March 2021. Tr. 491–94. She complained of moderate ankle pain and reported that the symptoms had lasted one to three months. Tr. 491. Physical findings were mostly normal apart from pain and deformity in her foot. Tr. 491–92.

In a statement dated March 4, 2021, Dr. Allen opined Sjolander will be off task for at least twenty-five percent of a typical workday, can concentrate for only fifteen minutes at a time, likely will be absent from work four days a month, can never lift or carry any weight, can sit for three hours and stand or walk for less than one hour in an eight-hour workday, requires an assistive device to walk, can frequently use left-foot controls and never use right-foot controls, and can never engage in postural activities or be exposed to environmental hazards. Tr. 483–86.

5

In a statement dated June 7, 2021, Dr. Allen gave the same opinion, except that Sjolander can concentrate for thirty rather than fifteen minutes, can "rarely" lift or carry up to ten pounds, can sit for two hours and stand or walk for one hour in an eight-hour workday, and can "rarely" be exposed to humidity or wetness. Tr. 538–41.

The ALJ conducted a hearing on March 18, 2021, at which Sjolander was represented by an attorney, and Sjolander and a vocational expert (VE) testified. Tr. 33–59. Sjolander's relevant testimony includes that she was taking no prescription pain medication at the time and had not pursued surgery as Dr. Allen recommended because she thought she would be unable to move to Michigan if she did. Tr. 46–49. The VE's relevant testimony includes that being off task for at least ten percent of the workday would preclude work. Tr. 57.

## III. ALJ's Decision

In the decision, the ALJ proceeded through the five-step sequential process.[2]

---

[2] To decide whether a person is disabled, the Social Security Administration (SSA) uses a five-step sequential process. 20 C.F.R. § 416.920(a)(4). At step one, the SSA asks whether the claimant is engaged in "substantial gainful activity." *Id.* At step two, the SSA asks whether the claimant has a severe impairment or combination of impairments. *Id.* At step three, the SSA asks whether the claimant has an impairment or combination of impairments meeting or medically equaling the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the SSA asks whether the claimant can perform any "past relevant work" considering her residual functional capacity. *Id.* And at step five, the SSA asks whether there are a significant number of jobs in the national economy she can perform considering her residual functional capacity, age, education, and work experience. *Id.* If the SSA finds disability or no disability at a step, the SSA will "not go on to the next step." *Id.*

At step one, the ALJ found Sjolander has not engaged in substantial gainful activity since November 21, 2019 (the amended alleged onset date). Tr. 19.

At step two, the ALJ found Sjolander has severe impairments of "degenerative disc disease; right foot calcaneal fracture; and primary osteoarthritis, right ankle and foot[.]" Tr. 19. The ALJ observed, "The medical record in evidence is devoid of any mental examinations, laboratory findings, or treatment plans to establish [the] existence [of mental impairments] during the relevant period." Tr. 19.

At step three, the ALJ found Sjolander has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20.

The ALJ found Sjolander has this RFC:

> [She can] perform medium work as defined in 20 CFR 416.967(c) except [she] can lift and carry 50 pounds occasionally, and 25 pounds frequently; can stand and walk for 6 hours each, and sit for 6 hours in an 8 hour workday, with normal and customary breaks; cannot climb ladders, ropes or scaffolds; can frequently climb ramps, balance, stoop, kneel, and crouch; can occasionally climb stairs, and crawl; can frequently reach and handle; and must avoid concentrated exposure to extreme cold and hazards.

Tr. 20.

The ALJ detailed Sjolander's treatment history after the alleged onset date, Tr. 20–24, evaluated the medical opinions in the record, beginning with Dr. Stephan's and Dr. Meade's opinions, and found them persuasive, explaining:

7

> The State agency medical consultants, Bradley Stephan, MD and Larry Meade, DO, both opined that [Sjolander] retained the ability to perform work at the medium exertion level, with additional postural limitations (Exhibits 2A and 5A). The opinions of Dr. Stephan and Dr. Meade are persuasive, because they are consistent with each other, they are supported by detailed written explanations, and they are consistent with the evidence received at the hearing level, which shows that [Sjolander] has full range of motion, full strength, full sensation, and the ability to ambulate with a normal gait without an assistive device. It is further noted that [Sjolander] testified at the hearing that she does not take any prescription pain medication, and uses over the counter Tylenol for her arthritis pain.

Tr. 24.

The ALJ then evaluated Dr. Allen's opinions and found them unpersuasive, explaining:

> In contrast, on March 4, 2021, Dr. Allen signed a medical source statement in which he opined that if [Sjolander] attempted to work, she would be off task for greater than 25% of each workday, would be limited to maintaining attention and concentration for less than 15 minutes at a time, and would be absent from work for 4 days each month as the result of her impairments and treatment. Dr. Allen further opined that [Sjolander] cannot lift or carry any amount of weight, can stand and walk for less than one hour and sit for approximately three hours in an 8-hour workday, and must wear a cast boot for any ambulation (Exhibit 13F). Despite his treating relationship with [Sjolander], the opinion of Dr. Allen is not persuasive, because it limits [her] to an extreme level that is not consistent with or supported by the overall medical evidence. Specifically, after [Sjolander's] March 11, 2020 visit with Dr. Allen, [she] was not seen by [a] medical provider for any reason until the consultative examination by Dr. Greenfield on June 30 2020, which established that [she] had a normal gait, normal range of motion, normal strength, and normal sensation. [She] then did not seek or receive medical attention for any reason until she returned to Dr. Allen on March 3, 2021. For the same reason, the [ALJ] finds that the opinion expressed by Dr. Allen in the medical source statement dated June 7, 2021 is not persuasive (Exhibit 17F). While Dr. Allen states in that medical source statement that he treated [Sjolander] on June 7, 2021, there is no report from that visit in evidence, and Dr. Allen's opinion is not consistent with or supported by his prior reports. There are significant gaps in [Sjolander's] medical treatment, and [her] failure to

8

> follow the recommendations of her providers regarding physical therapy and a surgical consultation suggests that her symptoms were not as severe and disabling as she alleges. Even so, the [ALJ] notes that the [RFC] above is formulated with postural, manipulative, and environmental limitations to accommodate [Sjolander's] difficulties in performing a range of medium work caused by her impairments.

Tr. 24.

At step four, the ALJ found Sjolander has no past relevant work. Tr. 25.

At step five, the ALJ relied on the VE's testimony and found Sjolander can perform jobs existing in significant numbers in the national economy, including "industrial cleaner," "roll coverer, burlap," and "packer, agricultural produce." Tr. 26 (capitalization omitted).

Thus, the ALJ found Sjolander is not disabled. Tr. 26.

## IV.  Standard of Review

A court's review of the Acting Commissioner's decision is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.* Under this standard of review, a court may not reweigh the evidence or substitute its judgment for that of the Acting Commissioner. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## V.     Law & Analysis

Substantial evidence supports the ALJ's finding that Sjolander has the RFC to perform medium work with additional limitations. This evidence includes consistent treatment notes showing mostly normal physical findings, Tr. 336, 354–55, 361–62, 364–65, 366–67, 369–71, 381, 466–67, 491–92, 498, 499, 503, 504, 507, 508, 514, 518–19, findings that Sjolander "does not seem too uncomfortable" despite reported severe pain, Tr. 514, findings her gait and muscle tone were normal and she had full muscle strength and full or good range of motion, Tr. 354–55, 498–99, 508, findings she had no pain, Tr. 468, 498, 499, findings she had no deformities, Tr. 354–55, 508, and findings that medication improved or controlled her pain, Tr. 521, 524.

Sjolander argues the ALJ failed to properly evaluate Dr. Allen's opinions, and, therefore, substantial evidence does not support the ALJ's RFC finding.

The Social Security Administration (SSA) will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a).

Instead, the SSA will evaluate the persuasiveness of a medical opinion from a medical source considering "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." *Id.* § 416.920c(a) & (c)(1)–(5). Of these factors, supportability and consistency "are the most important" in determining the persuasiveness of a medical source's medical

10

opinion, and the ALJ must explain how he considered them. *Id.* § 416.920c(b)(2).

An ALJ need not address every piece of evidence in the decision as long as the decision "is not a broad rejection" and remains sufficient for the court to conclude the ALJ considered the claimant's condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation marks and quoted authority omitted).

Here, the ALJ properly evaluated Dr. Allen's opinions. The ALJ specifically discussed supportability and consistency, as required under the regulations, and he contrasted the opinions with medical findings showing a normal gait, normal range of motion, normal strength, and normal sensation. Tr. 24. He also observed that Dr. Allen's opinions are inconsistent with, and unsupported by, his own earlier reports. Tr. 24; *see also* Tr. 361–62, 364–65, 366–67, 369–71, 491–92 (Dr. Allen's treatment notes showing mostly normal findings).

Sjolander complains, "The ALJ first claimed Dr. Allen's opinion was inconsistent with consultative examiner Dr. Greenfield. While Dr. Greenfield's findings were admittedly less severe than Dr. Allen's, the ALJ may not cherry-pick one medical evaluation from an over 500-page record and claim Dr. Allen's opinion was inconsistent with the overall evidence." Doc. 17 at 10 (internal citation omitted). As the Acting Commissioner persuasively counters, "This argument is curious because even [Sjolander] acknowledges that the ALJ considered all of the medical opinions in the record. Thus, the ALJ did not 'pick and choose' which evidence to consider. Rather, the ALJ fulfilled [his] duty to consider all of the medical opinions and determine which was most persuasive in light of the record." Doc. 18 at 7–8; *see also* Tr. 336, 354–55, 361–62, 364–

11

65, 366–67, 369–71, 381, 466–67, 468, 491–92, 498, 499, 503, 504, 507, 508, 514, 518–19, 521, 524 (medical evidence inconsistent with Dr. Allen's opinions).

Sjolander argues, "Contrary to the ALJ's claim, the overall record was consistent with Dr. Allen's findings." Doc. 17 at 10. She points to medical records describing her foot injury and argues, "The ALJ seemingly avoided discussing these findings … choosing instead to focus on a singular consultative examination and a lull in treatment. Cherry-picking of this degree cannot pass as a true evaluation of an opinion's consistency." Doc. 17 at 10–11 (internal citation omitted). As explained above, an ALJ need not address every piece of evidence. *See Dyer*, 395 F.3d at 1211. The ALJ's detailed discussion of Sjolander's medical treatment suffices to show he considered her condition as a whole. Moreover, he cited some of the records to which she refers. Tr. 22–23.

Sjolander complains the ALJ mischaracterized the record by observing she neither sought nor received medical treatment between June 30, 2020, and March 3, 2021. Doc. 17 at 11. She observes that she received imaging of her spine in early July 2020 and testified that she had reservations about undergoing surgery. Doc. 17 at 11–12. She fails to show reversible error. The ALJ's finding that the gap in her treatment suggests her symptoms are less severe than she alleges is not undermined by the spinal imaging taken within days of the June 2020 appointment or her reservations, which were driven not by the surgery itself but by worries about relocating.

Sjolander argues, "It should be noted that Dr. Allen's 2021 opinions were significantly more recent relative to the non-examining state agency opinions of Dr. Stephan and Dr. Meade from 2020. As a result, the non-examining opinions … lacked a complete medical record or the benefit of a treating source opinion[.]" Doc. 17 at 12. Again, Sjolander fails to show reversible error. As the

Acting Commissioner persuasively argues, "This is not a factor in evaluating medical opinions under the regulations, and [Sjolander] cites to no authority in support of this claim. Moreover, the state agency experts rendered their opinions during a period for which [Sjolander] is seeking benefits, so their opinions were in fact relevant to determine whether [she] was disabled during the relevant time period. And, notably, the state agency experts made their findings shortly after [she] ceased active treatment, unlike Dr. Allen who submitted his opinions a year later." Doc. 18 at 9 (internal citation omitted).

Sjolander argues, "Had the ALJ properly evaluated Dr. Allen's opinion, the ALJ would have found [her] disabled under the VE's testimony," and observes that the VE testified being off task for at least ten percent of the day would preclude work. Doc. 17 at 12–13. The ALJ properly evaluated Dr. Allen's opinions, and the RFC is supported by substantial evidence. The Court need not consider the VE's testimony that more severe limitations would preclude work.

Ultimately, even if the Court would have found Dr. Allen's opinions more persuasive, the decision must be affirmed because the ALJ applied the correct legal standards and substantial evidence supports the ALJ's finding concerning the persuasiveness of those opinions.

## VI.   Recommendation

The undersigned recommends **affirming** the Acting Commissioner's decision and **directing** the clerk to enter judgment for the Acting Commissioner and against Debra Kay Sjolander and close the file.

## VII.  Deadline for Objections and Responses to Objections

"Within 14 days after being served with a copy of [a report and recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters review by the district judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on January 24, 2023.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*